FILED

1   Goldy M. Berger (Bar No. 219183)
   Law Offices of Goldy M. Berger
2   5655 Lindero Canyon Road, Suite 521-12
   Westlake Village, CA 91362
3   Telephone: (818) 597-7755
   Facsimile: (818) 597-7757
4

2014 JAN -2  PM 2: 17

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

5   Stephen J. Thomas (Bar No. 120751)
   Tim C. Lin (Bar No. 263885)
6   THOMAS BUSINESS LAW GROUP, P.C.
   17800 Castleton Street, Suite 657
7   City of Industry, CA 91748
   Telephone: (626) 771-1005
8   Facsimile:  (626) 628-1905

By Fax

9

10   Attorneys for Plaintiffs,
   MIKA NEWSOM AND BRADLEY NEWSOM

11            UNITED STATES DISTRICT COURT

12    CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION

13

14

| | |
|---|---|
| MIKA NEWSOM AND BRADLEY NEWSOM, | Case No.: ED CV-12-01935-VAP(OPx) |
|       Plaintiffs, | SECOND AMENDED COMPLAINT |
| vs. | (1)   BREACH OF CONTRACT; <br> (2)   FRAUD; <br> (3)   NEGLIGENT MISREPRESENTATION; |
| BANK OF AMERICA, a Delaware Corporation and BAC Home Loan Services, an unknown entity | (4)   PROMISSORY ESTOPPEL; <br> (5)   UNFAIR AND DECEPTIVE BUSINESS PRACTICES(Business & Prof. Code §17200) |
|       Defendants. | (6)   UNJUST ENRICHMENT; <br> (7)   EQUITABLE INDEMNITY; <br> (8)   VIOLATION OF CIVIL CODE §1785.1 et. Seq <br> (9)   MORTGAGE FORECLOSURE CONSULTANT ACT 1979 (C.C.P. § 2945); <br> (10) UNTRUE AND MISLEADING REPRESENTATIONS (Business & Prof. Code 17500 et.al) <br> (11) VIOLATION OF 15 U.S.C. §1681 |

SECOND AMENDED COMPLAINT

1

Plaintiffs MIKA NEWSOM AND BRADLEY NEWSOM complain against defendants BANK OF AMERICA ("BOFA") and BAC Home Loan ("BAC") and allege:

## PARTIES

1. Plaintiffs MIKA NEWSOM AND BRADLEY NEWSOM are residents of San Bernardino County, California, and are the owners of the real property commonly known as 5558 North Cedar Drive, San Bernardino, CA 92407 (the "Property"). The assessor's parcel number for the Property is 0154-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 and the address of the Property is Address 5558 North Cedar Drive, San Bernardino, CA 92407.

2. Plaintiffs are informed and believe and thereon allege that defendant Bank of America, National Association ("Bank of America") is a Delaware Corporation and is a national lending banking association with its principal place of business in Charlotte, North Carolina and doing business in the State of California and County of San Bernardino.  Bank of America is the beneficiary of the deed of trust.

3. Plaintiffs are informed and believe and thereon allege that defendant BAC Home Loans Servicing ("BAC") is an entity of unknown type and, at all times relevant herein, was/is doing business in the State of California and County of San Bernardino.

4. Plaintiffs are informed and believe that each of the defendants, at all times relevant hereto, was an agent and an employee of each of the other defendants, acting in the course of their agency and employment and with the permission and consent of the principal.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that it is a civil action arising under the Constitution, laws, or treaties of the United States.  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship and an amount in controversy in exceeding $75,000).

6.    Venue is proper in the District Court for the Central District of California pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

### FACTS COMMON TO ALL CAUSES OF ACTION

7.    Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit defendants at the expense of plaintiffs by engaging in fraudulent and otherwise wrongful activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, plaintiff(s) inability to qualify for a loan modification under the provisions of the , ("HAMP") Home Affordable Modification Program by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, inter alia, all of the acts that each of them is alleged to have committed in furtherance of the wrongful conduct complained of herein.

8.    For valuable consideration, plaintiffs, as borrowers, made, executed and delivered to Bank of America and/or BAC's predecessor, a written promissory note in the amount of 260,000.00 (the "Loan").

9.    To secure payment of the principal sum and interest as provided in the note as part of the same transaction, plaintiffs, as trustors, executed and delivered to Bank of America and/or BAC's predecessor, as beneficiary, a deed of trust dated 7/5/2005 by the terms of which plaintiffs, as trustors, conveyed to predecessor, as trustee, real property described in paragraph "1." On 7/5/2005, the deed of trust was recorded against the Property in the State of California, Official Records of the County of San Bernardino.

10.    On July 2010 plaintiffs were current on their mortgage when they were solicited by defendants to apply for a loan modification.

11.   On or around August 2010, plaintiffs applied for a loan modification. Defendants informed plaintiffs that plaintiffs did not qualify for modification under the Home Affordable Modification Program (HAMP) because plaintiffs were current on their mortgage. Defendants by and through their agent (who refused to provide their name) instructed plaintiffs not to pay their mortgage payment and to submit paperwork for a loan modification under HAMP. Plaintiffs then submitted all the necessary documents to process their application.

12.   In September 2010 plaintiffs were informed by defendants by telephone that defendants would not accept any payments towards plaintiffs' mortgage while the loan modification was under review. Plaintiffs were concerned about their credit and their home being foreclosed on. The representative plaintiffs spoke with, Eric, reassured plaintiffs that defendant would neither report plaintiffs to a credit agency nor foreclose on plaintiffs' home as long as plaintiffs were in the process of applying for a loan modification.

13.   On November 15, 2010 the bank filed a Notice of Default against plaintiffs without any further notice to them or any update regarding plaintiffs' application.

14.   On December 14, 2010 defendants sent plaintiffs a letter saying that they were reviewing documents that had been submitted four months prior, in August 2010. During this time, this letter was the only correspondence plaintiffs received from defendant regarding their loan modification application. In the meantime, the bank had already filed a Notice of Default against the plaintiffs. Defendants state in the letter that they would get back within 30 days with their response.

15.   On December 28, 2010, plaintiffs called defendant at (866) 422-5871 and was told by an agent named Christine that the loan modification was still under review and no payments will be accepted.

16.   On February 1, 2011, defendant sent a letter requesting additional documents it claimed it had not received. Plaintiff had sent the documents they requested numerous times before with confirmation of receipt by fax and mail.

17.   On April 2, 2011, defendant sent a letter to plaintiffs stating that they were not eligible for a loan modification under HAMP because their income was too high, but suggested plaintiffs appeal. In response, plaintiff sent defendant updated information and monthly income and expense

statement. They requested that the appeal paperwork be sent to them. They attempted to make a payment by phone and the representative would not accept it.

18. On April 20, 2011, defendant contacted Plaintiff and requested that plaintiffs submit a new package for in-house loan modification instead of a HAMP appeal. Again attempted to make a payment by phone and the representative would not accept it.

19.   On May 12, 2011, defendant again requested that plaintiffs submit a new package for in-house loan modification claiming they did not receive the last Fed Ex package.

20.   On May 31, 2011 defendant sent a trial loan modification program to plaintiffs to pay $1,227.42 for three months (June, July, & August) and expressly promised that the mortgage would be permanently modified once all of the payments were made.  A true and correct copy of this agreement is attached as Exhibit 1 and incorporated by reference at this point.

21.   Plaintiffs timely paid all three payments. Defendant did not send a permanent loan modification package to the plaintiffs.  Plaintiffs called 1-800-669-0102 and spoke to Richard (ID # 9896) who represented to plaintiffs that defendant are backed up on paperwork, instructed plaintiffs to continue to make payments 4 and 5 pursuant to the trial modification program and a represented that the final loan modification would be sent to the plaintiffs. Plaintiffs did as they were told and made the additional payments.

22.   By November 22, 2011, plaintiffs still had not received the permanent loan modification package from defendant.   Plaintiff called 1-800-669-0102 and spoke to Theresa who represented to defendants that they were going to be granted a permanent loan modification and instructed plaintiffs to keep paying the monthly payments.  In reliance on these representations, plaintiff continued to make the monthly payments pursuant to the trial modification plan.

23.   On December 1, 2011, still having not received the permanent loan modification package from defendant, plaintiffs called defendant at 1-800-669-0102 and talked to Rick (ID #9809) who represented to plaintiffs the Plaintiff to make another trial payment and that the permanent loan modification is forth coming.

24.   On December 13, 2011, still having not received the permanent loan modification package from defendant, plaintiffs called defendant at 1-800-669-0102 and spoke with Chuck (ID #58938) who represented to plaintiffs that the loan modification had been accepted and the package would be coming soon.

25.   On December 29, 2011, still having not received the permanent loan modification package from defendant, plaintiffs called defendant at 1-800-669-0102 and spoke with Ametria Dentris (ID #8663).  Defendants instructed plaintiffs to make trial modification payment for that month.

26.   On January 30, 2012, still having not received the permanent loan modification package from defendant, plaintiffs called defendant at 1-800-669-0102 and spoke with an agent with the ID #8608 who instructed plaintiffs to continue making the trial modification payment for that month.

27.   On April 2, 2012, still having not received the permanent loan modification package from defendant, plaintiffs called defendant at 1-800-669-0102 and spoke with Rosemary (ID #8608) who instructed plaintiffs to continue making the trial modification payment for that month.

28.   On or around May 4, 2012, plaintiffs received a letter from RDS Services, who was acting as an agent for Defendants, informing plaintiffs that they were in default.  Plaintiff called RDS Services at 1-800-933-9189 and spoke to Cedrick who informed plaintiffs to ignore the letter because plaintiffs were in a loan modification with defendant.

29.   By October 23, 2012, plaintiffs' home was in the process of foreclosure.  Furthermore, defendants denied that plaintiffs were in the loan modification process.  Moreover, plaintiffs' monthly payments had increased more than their original payments purportedly because of the costs and fees added onto plaintiff's loan for being in "default."  Finally, plaintiffs' loan was reported as delinquent to the credit agencies destroying their credit.

## FIRST CAUSE OF ACTION

### Breach of Contract Against All Defendants

30.   Plaintiffs specifically reallege and incorporate herein by reference against all defendants each and every allegation contained in Paragraphs 1 through 29 hereof.

31.   As alleged hereinabove, defendants entered into a written contract with plaintiffs.  The contract obligated defendants to modify plaintiffs loan. A true and correct copy of the Agreement is attached as Exhibit 1 and incorporated by reference at this point.  The agreement states on page 1, line 22, that *"After all trial period payments are timely made, your mortgage will be permanently modified."*

32.     Plaintiffs timely made all trial payments pursuant to the terms of the Agreement.

33.     Defendants breached their Agreement with plaintiffs by failing to provide a permanent loan modification to plaintiffs.  Instead, defendants, after receiving over a year of trial payments, denied ever providing a loan modification to plaintiffs and raised plaintiffs' mortgage payments by $200.00 per month.  Defendants' refusal to perform obligations outlined in the Agreement constitutes a material breach of the Agreement.

34.     Plaintiffs fully and completely performed all obligations under the terms of the Agreement.

35.     Had defendants performed as agreed, plaintiffs would have been able to afford the loan and thereby avoid damages.

36.     As a proximate result of defendants' breach, plaintiff suffered economic loss in an amount in excess of $75,000.01 to be determined by proof at trial.

## SECOND CAUSE OF ACTION

### Actual Fraud Against All Defendants

### (California Civil Code §1572)

37.     Plaintiffs specifically reallege and incorporate herein by reference against all defendants each and every allegation contained in Paragraphs 1 through 36 hereof.

38.     Defendants instructed plaintiffs not to pay their mortgage so that plaintiffs would qualify for the HAMP loan modification program.  This action was against the HAMP guidelines and started a "dual track" of foreclosure while the loan modification application was being processed by the bank.

39.     Defendants used the loan modification program to "purge" any prior loan modification fraud claims against the Defendant by following a loan modification program designed to fail the homeowner.  The plaintiff is a victim of this "calculated" business plan perpetrated by making promises that defendant never intended to keep.

40.     Plaintiffs relied on these representations to their detriment by paying the trial payments for a program that they were told they would qualify for in 3 months trial period turning into over 1 year of trial payments. Plaintiffs were in contact with numerous Bank employees during these two years who all promised that everything was going smoothly, the loan modification had been approved and that the permanent loan modification package would be coming shortly.  Meanwhile, the bank was moving forward with the foreclosure and government application for financial assistance for their own benefit with no intention of performing for plaintiff.

41.     Defendants did not suspend any pre-foreclosure action against the plaintiffs as evidenced by defendants' filing of their Notice of Default (NOD) November 15, 2010.  Defendant used this NOD action to "scare & intimidate" the plaintiffs into relying on the defendant's promises that the home will not be foreclosed if trial modification payments are continued and a future loan modification will be granted.

42.     Defendants purposely mismanaged plaintiffs' loan modification programs for their own financial gain. Defendant took excessive and non-compliant processing time between August 2010 – May 2011 to "run-up" fees and services on the plaintiff's existing mortgage so that reinstatement would require an outrageous payment that plaintiff would be unable to pay.

43.     Defendants suppressed the truth that they never intended to modify plaintiff's loan but verbally and in writing told plaintiffs otherwise.  As a proximate result thereof, plaintiffs have been damaged in an amount to be proven at trial and as found in their prayer for damages but not less than the jurisdictional limit of this court.

44.     Defendants made a promise to plaintiffs without any intention of performing; inducing them to pay less than their original mortgage so they could deem them delinquent. By deeming them delinquent they were able to claim government, insurance and other monies to benefit the bank, to the detriment of the plaintiffs.  They further deprived plaintiffs of any other options they may have had by stringing them along for 2 years in order to benefit their own bottom line.

45. The aforementioned conduct was intentional misrepresentation, deceit and or concealment of material facts known to defendants, with the intention on the part of defendants of thereby depriving plaintiffs of property, legal rights or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard of plaintiff's rights so as to justify an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION

#### Negligent Misrepresentation Against All Defendants

46. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 45.

47. Defendants in making the aforementioned misrepresentations detailed in the first cause of action, knew that such misrepresentations were material facts, which were false or had knowledge of the effect of the concealment of the truth of such facts. They wanted to induce a homeowner who was on time with payments and had solid credit in order to obtain government benefits for their own purpose.

48. Defendants, in making the aforementioned misrepresentation, intended that plaintiff justifiably or reasonably rely on their misrepresentations and lose other opportunities to save their home and their credit, which they did.

49. As a proximate result thereof, plaintiffs have been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this court.

### FOURTH CAUSE OF ACTION

#### Promissory Estoppel Against All Defendants

50. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 45.

51.     Defendants made a promise not to proceed with foreclosure proceedings of the property as long as plaintiffs made interim payments. Plaintiffs abided by the terms of the agreement to modify the loan by making the required payments, providing the required documents, contacting the bank on a regular basis for status and updates.

52.     Defendants have breached such promise by serving and recording the Notice of Default documents, notice to accelerate the loan and foreclosure notices. Due to these actions, plaintiffs lost the opportunity to apply for other programs and government assistance, and are now in grave danger of losing their home.

53.     Plaintiffs' reliance on defendants promise was reasonable and foreseeable as it was made on the phone and in writing on numerous occasions with their own bank which they trusted and believed were looking out for their interests.

54.     Plaintiffs have been injured by their reliance on defendants' promises in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Conversion Against All Defendants

55.     Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 54.

56.     Defendant wrongfully interfered with plaintiff's interests in the Interim Payment above described in the amount of $1227.42 by using such payments to pay for property tax and insurance premiums plaintiff was already paying for instead of applying such sum to the principle and/or interest of the Loan amount or otherwise pursuant to Defendants' obligations under the Loan because they were moving forward with the foreclosure and were applying the funds to better serve the defendants.

57.     As a result of Defendants' acts of conversion, plaintiff has been damaged in the sum or sums to be proven at trial, including all compensatory damages and repossession of the converted

property and will seek its election of remedies at trial. Plaintiff further entitled to compensation for the time and money expended pursuit of the property.

58.     Further, plaintiff are entitled to the imposition of a constructive trust on the converted goods and their fruits and is entitled to a tracing with respect to the converted goods.

## SIXTH CAUSE OF ACTION

### Unfair Competition Against All Defendants

### (Business & Professions Code §17200)

59.     Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 58.

60.     On 10/13/2011 defendants were given written notice in letter form under the California Consumer Legal Remedies Act, ("CLRA") California Civil Code Section 1750, et seq., (the "ACT") -- pursuant specifically to Civil Code Section 1782 -- notifying Bank of America Corporation & BAC Home Loan Servicing, LP of violations of the Act and of our demand; they failed to remedy such violation within 30 days from receipt of this letter.

61.     From a date specifically unknown to plaintiffs and continuing to the present, defendants, and each of them, have engaged in and continue to engage in, aiding and abetting and continue to aid and abet, and conspired to and continue to conspire to engage in acts or practices that constitute unfair competition as defined in Business and Professions Code §17200. Such acts or practices include, but are not limited to, the following:

a.     Failing to perform promises made modifying plaintiffs' loan in exchange for lower payments and bank being eligible to receive funds from HAMP program to benefit themselves at the cost of damaging plaintiffs.

b.     Deceiving plaintiffs into believing that lower mortgage payments would end up being permanent, since modification application would be successful. Defendants also made

plaintiffs believe that the missed mortgage payments would not endanger or adversely impact their loan or credit.

    c.    Violating 18 United States Code §1014 and California Penal Code §532(a) by knowingly submitting false statements regarding plaintiffs' income, expenses, and occupation status in attempt to induce federally insured lenders to agree to reimburse the bank for the default.

62.    Because plaintiff is benefiting the general public by seeking to cure the legal violations and harm noted herein, plaintiffs request their attorney's fees pursuant to C.C.P § 1021.5.

## SEVENTH CAUSE OF ACTION

### Reports Made To A Consumer Credit Agency As Against All Defendants

### (Violation Of Civil Code §1785.1 et. seq)

63.    Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 62.

64.    Defendants knowingly made false reports to credit report bureaus that plaintiffs were in default of the Loan without providing plaintiffs with notice in violation of HAMP guidelines and damaging plaintiffs' credit rating.

65.    At the time of and in making such reports, defendants understood them to cast doubt upon the existence or extent of plaintiffs' interest in the Property.

66.    At the time of and in making such reports, defendants lacked privilege to make such reports and/or defendants made such reports with malice to the detriment of plaintiffs.

67.    As a result of defendants' misconduct and slander of title, plaintiffs have been damaged in the sum or sums to be proven at trial, including all compensatory damages. Plaintiffs had numerous credit cards taken away, were denied for a car loan, incurred higher interest on current monies owed and are now unable to apply for the Home Affordable Refinance Program due to bad credit. Plaintiffs' credit rating has also dropped approximately 300 points.

68.   In doing the acts herein alleged, defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of plaintiffs, and plaintiff is therefore entitled to punitive damages according to proof at the time of trial.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment Against All Defendants

69.   Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 68.

70.   The defendants engage in the business providing financial services and products to the public, including but not limited, lending monetary sums to individuals secured by real property interests, and foreclosing on their secured interests in such real property.

71.   The actions by defendants, as alleged herein, each constitute unlawful, unfair or fraudulent business acts or practices under Business and Professional Code § 17200.  Defendants mislead the consumer in order to obtain certain benefits in which they were not entitled to.

72.   The defendants, and each of them should be enjoined from engaging in the aforementioned acts and be required return the Interim Payments in the total sum of $40,694.54 to plaintiffs.

## NINTH CAUSE OF ACTION

### Violation Of The Mortgage Foreclosure Consultant Act 1979 Against BAC

### (Cal. Civ. Code § 2945)

73.   Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 72.

74.   BAC represented that they can assist homeowners who have defaulted on obligations secured on their residence, and essentially performing no service, diverting plaintiffs from lawful businesses which could render beneficial services.

75.    In addition to the conduct alleged as part of the above in this Complaint, defendant also regularly violate California Civil Code §2945 'The Mortgage Foreclosure Consultant Act of 1979 by:

a.    Collecting advance fees for Loan Modification services even when the consumers they solicited for services had already defaulted on their mortgage obligations, lenders had recorded notices of default against the plaintiffs' property, and/or lenders had issued a notice of trustee sale of the plaintiffs' property.

b.    Receiving compensation and consideration from third parties in connection with the aforementioned services without disclosure to plaintiffs.

c.    Inducing, or attempting to induce, plaintiffs to enter into a contract that does not comply in all respects with §2945.2 and §2945.3 of California Civil Code §2945.

76.    As alleged herein, defendants' intention to foreclosure on the Property was wrongful and subject to fraud, deception and harassment. Bank of America transferred the Deed of Trust to BAC on 3/22/11, years after the attempt for loan modification had started.

77.    As a direct result of defendant's conduct, plaintiffs have suffered damages in an amount to be determined by proof at trial.

## TENTH CAUSE OF ACTION

### Untrue And Misleading Representations Pursuant To Business & Prof. Code 17500

### Against All Defendants

78.    Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 77.

79.    Defendants have violated and continue to violate Business and Professions Code §17500 by making or causing to be made untrue or misleading statements with the intent to induce consumers, such as plaintiffs, to pursue a loan modification with Bank of America instead of an alternative method such as refinance or default.

80. Due to their status as a bank that has secured the loan on plaintiffs' property, defendants knew or had reason to know that the homeowner has a high degree of trust and belief in defendants' representations and promises.

81. Defendants knew that the homeowners will do as they are told in exchange for the promise of lower payments, lower interest and a principle reduction with conscious disregard as to the consequences.

### ELEVENTH CAUSE OF ACTION

### Violation of 15 U.S.C. § 1681 (Fair Credit Reporting Act)

### Against All Defendants

82. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1 through 76.

83. Defendants regularly and in the course of business, furnishes information to one or more consumer reporting agencies about their transactions or experiences with any consumer.

84. 15 U.S.C. ¶1681(m) requires users of consumer reports to provide oral, written or electronic notice of any adverse action taken with respect to any consumer that is based in whole or in part on information obtained in a consumer report.

85. Defendants did not notify the plaintiffs at any time that plaintiff did not qualify for a loan modification and that since the loan was still in default, that there would be an adverse action, or that plaintiff had failed to provide sufficient information to investigate the disputed information.

86. Defendants knowingly made false reports to consumer reporting agencies that plaintiffs were in default of the Loan without providing plaintiffs with notice.

87. 15 U.S.C. §1681(n) provides that any person who willfully fails to comply with any requirement imposed under §1684(n) is liable to the consumer for damages of not less than $100 and not more than $1,000. Accordingly, plaintiffs are entitled to recover statutory damages.

88.     Plaintiffs are also entitled under 15 U.S.C. §1681(n) to recover such amount of punitive damages as the court may allow.

89.     Plaintiffs are entitled to costs along with reasonable attorney fees as determined by the court pursuant to 15 U.S.C. §1681(n).

**PRAYER**

WHEREFORE plaintiffs pray for relief as follows:

For all Causes of Action against all Defendants:

1.  For monetary damages in the amount as follows:

    (1) $40,694.54 in payments made to bank;

    (2) $3000.00 closing costs;

    (3) $100,000.00 damage to credit;

    For total monetary damages in the amount of $143,694.54;

2.  For punitive and exemplary damages;

3.  Restitution in the sum of $300,000.00;

4.  For interest thereon at the legal rate of (10%) per annum;

5.  For attorney's fees pursuant to C.C.P §1021.5;

6.  For a Judicial Determination and Declaration that plaintiffs did not breach his obligation under the Loan, that plaintiffs' breach, if any, is excused by defendants' fraudulent misrepresentations that caused such breach and/or the notice of default claimed improper amount is null and void;

7. For an Order Restraining the Trustee for conducting the foreclosure sale of the Property that it intends on conducting;

8. For an Order directing defendants to perform an Accounting of the current sums owed under the Loan;

9. For an Order that a Constructive Trust be created of the funds which defendants converted;

10. For an order that the defendants be enjoined from engaging in wrongful acts of inducing borrowers from applying for HAMP Modifications of their loans with Bank of America by misrepresentations that they are reviewing their application for qualification, while knowing that such borrowers do not qualify based on federally set objectives standards, and requiring such applicants to pay to them interim payments which they impound for payment of property taxes and insurance instead of using such payments to pay the principle balance owed and accruing interest.

11. For reasonable attorney's fees; and

12. For such other and further relief as the court may deem proper and just.

Respectfully submitted,

THOMAS BUSINESS LAW GROUP, P.C.

Stephen J. Thomas
Tim C. Lin
Attorneys for Plaintiffs

Dated: December 31, 2013

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

Oct 22 12 12:00p        Law Offices o    Berger                          81⁵    2177                    p.23

# Bank of America

Bank of America, N.A.
Attn Home Retention Division: CA6-919-01-43
400 National Way
Simi Valley, CA 93065

June 4, 2012

MIKA M. ALARCON
BRADLEY C. NEWSOM
5558 CEDAR DRIVE
SAN BERNARDINO    CA 92407-5344

Loan       : 60594332
Property   5558 NORTH CEDAR DRIVE
Address:   SAN BERNARDINO, CA 92407

## IMPORTANT MESSAGE ABOUT YOUR LOAN

Dear BRADLEY C. NEWSOM, MIKA N. ALARCON

Bank of America, N.A. is committed to helping our valued customers who may be having difficulty in making their mortgage payments. Enclosed is a proposed agreement to modify your loan.  This modification agreement will not be binding or effective unless and until it has been signed by both you and Bank of America, N.A.  Further, in order for the loan modification to become effective, you must complete the actions in the "To Accept the Proposed Modification" section of this letter by no later than June 14, 2012.

### SUMMARY OF PROPOSED MODIFICATION

| | |
|---|---|
| Current Interest Rate | 6.875% |
| New Interest Rate | 3.500% |
| Unpaid Principal Balance [2] | $261,645.29 |
| New Maturity Date [3] | 7/1/2036 |
| Effective Date | 8/1/2012 |
| Interest Rate Term | 276 |

A breakdown of your new monthly payment is as follows:

| | |
|---|---|
| P&I Payment | $1,382.99 |
| Escrow / Option Ins: | $324.24 |
| New Monthly Payment: [4] | $1,705.23 |

TO ACCEPT THE PROPOSED MODIFICATION, COMPLETE THE FOLLOWING BY June 14, 2012:

1. Carefully review all documentation enclosed. [5]  On the following pages, we have outlined important legal terms and notices of this change. It is very important that you read and understand these terms.

2. Sign and date the enclosed Loan Modification Agreement in the presence of a notary. The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears on the enclosed agreement.

   Special Requirements if the Loan Modification Agreement is being executed in California:
   If executing the Loan Modification Agreement in the state of California, you must also sign and execute the California Notary Acknowledgement in the presence of a Notary. It will be utilized by the notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

   (Additional items to be completed on next page)

---

1  The enclosed terms are based upon information you provided to us and may be subject to validation.

2  Your "Unpaid Principal Balance" is calculated by adding the Delinquent Balance of $22,605.07 to your current Unpaid Principal Balance of $239,040.22.

3  Your new maturity date may have changed from your current maturity date as a result of the modification terms. This agreement will bring the loan current; however, you are still required to pay back the entire unpaid principal balance by the maturity date for your loan.

4  Payment subject to change. Review your agreement for more information.

5  Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

# Bank of America

3. Remit the Total Amount Due of $1,705.23 in CERTIFIED CHECK OR MONEY ORDER.

| | |
|---|---|
| First New Monthly Payment: | $1,705.23 |
| Title and Recording Fees: | $0.00 |
| Delinquent Escrow: | $2,735.55 |
| Foreclosure Fees: | $0.00 |
| Bankruptcy Fees: | $0.00 |
| Property Inspection: | $0.00 |
| Late Charges Due: | $0.00 |
| NSF/Misc. Fees: | $0.00 |
| Delinquent Mortgage Payment(s): | $0.00 |
| Less: Funds Held in Suspense | $2,735.55 |
| Less: Additional Contribution Agreed To | $0.00 |
| **Total Amount Due with Executed Agreement:** | **$1,705.23** |

4. Using the pre-addressed, pre-paid FedEx envelope and the address label provided, return all properly signed and notarized documents and Total Amount Due no later than June 14, 2012.

**DID YOU REMEMBER**
☐ Loan Modification Agreement
(See Item #2 above)
☐ California Notary Acknowledgement
(If applicable. See Above)
☐ Certified Check or Money Order for the Total Amount Due

NOTE: Failure to return all documents correctly signed, dated and notarized and the first payment as requested will result in processing delays.

**IMPORTANT TERMS OF PROPOSED MODIFICATION**
Upon the modification agreement becoming binding and effective, the mortgage will be modified to reflect the following terms. Please read this section carefully to understand the impact of this modification on your current mortgage.

**Delinquent Balance**
The following shows your current delinquent balance as of July 1, 2012. This reflects the total amount needed to bring your loan current. The proposed modification will cure the below delinquency and bring your loan current; however, it may also increase your monthly payment.

| | |
|---|---|
| Delinquent Interest accrued from March 1, 2011 to July 1, 2012: | $19,644.20 |
| Fees and Costs*: | $0.00 |
| Delinquent Escrow | $2,860.87 |
| Total Amount to be added to your Principal Balance : | $22,505.07 |

**Fees and Costs are Estimated***

Fees may include but are not limited to property inspection fees, property preservation fees, legal fees, appraisal fees, title report fees, recording fees and/or subordination fees. We have made every attempt to estimate the amount of fees and costs that may have beeen incurred and not yet paid by Bank of America, N.A. in the servicing of your loan. Fees and costs incurred but not yet billed and not included above will remain your responsibility following the modification.

You will not pay any modification fee in connection with this agreement.

1

## **PROOF OF SERVICE**

2

3 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4
        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and
5 not a party to the within action; my business address is 17800 Castleton Street, Suite 657, City of
   Industry, CA 91748.
6
        On December 31, 2013, I served the foregoing document described as **SECOND AMENDED**
7 **COMPLAINT** on the interested parties in this action as set forth on the attached service list in the
   following manner:
8

9 (X)    **BY MAIL**
   I am familiar with this firm's practice of collection and processing correspondence for mailing with the
10 United States Postal Service, and that the correspondence shall be deposited with the United States
   Postal Service on the same day in the ordinary course of business pursuant to Code of Civil Procedure
11 §1013a to the addresses below.  I am aware that on a motion of party served, service is presumed
   invalid if postal cancellation date or postage meter date is more than one day after date of deposit for
12 mailing affidavit.

13
   Justin D. Balser, Esq.                    Claire Dossier, Esq.
14 AKERMAN LLP                               AKERMAN LLP
   725 Figueroa Street, 38th Floor           1400 Wewatta Street, Suite 500
15 Los Angeles, CA 90017                     Denver, CO 80202

16

17 ( )    **BY PERSONAL SERVICE**
   I caused a true copy of said document(s) to be hand-delivered to the addressee(s) via a California
18 registered process server pursuant to Code of Civil Procedure §1011.

19

20
        I declare under penalty of perjury under the laws of the United States that the foregoing is true
21 and correct and that this declaration was executed on December 31, 2013 at City of Industry,
   California.
22

23

24                                          Bey Wu

25

26

27

28